IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**PENNECO PIPELINE CORPORATION,** )
**PENNECO OIL COMPANY, INC.,** )
)
      Plaintiff, )
)
v. ) 2:17cv1364
) **Electronic Filing**
**K. PETROLEUM, INC.** )
)
      Defendant. )

# OPINION

Plaintiff commenced this action seeking to confirm an arbitration award issued by Arbitrator Francis A. King on October 11, 2017. The award resolved disputes that had arisen pursuant to contracts pertaining to the production and transportation of natural gas. Presently before the court is defendant's motion to vacate the award in part. For the reasons set forth below, the motion will be denied.

The underlying arbitration arose in the following context. On February 23, 2007, plaintiff entered into two separate Drilling and Operation Agreements (hereinafter "agreement") with Mountain V Oil & Gas Co. (hereinafter "Mountain V"). Demand for Arbitration at 1. The agreement concerned the ownership, development, and operation of multiple natural gas wells located in Washington County, Pennsylvania, in the area known as "Hackett Field." Id. Pursuant to the agreement, each company purchased a 49.5% interest in wells located on land owned by the other, and Mountain V was designated the Operator of all of the wells. Id. Also subject to this agreement was Mountain V's pipeline gathering system through which the gas from the Hackett Field wells was (and is) collected and marketed to third parties. On March 27

2012, Mountain V assigned its interests and obligations under the agreement to Hayden Harper Energy KA, LLC ("Hayden Harper"). Complaint at ¶ 7. On February 24, 2015, Hayden Harper entered into a Purchase and Sale Agreement with defendant which ultimately resulted in its purchase of the gathering system. Id. at ¶ 8.

The agreement includes a right of first refusal regarding the sale of interests in the wells. Drilling & Operating Agreement at § 13. Section 3(c) of the agreement contains a provision that successor operators can be selected by any developer who acquires more than 50% interest in the wells. Id. at § 3(c)(ii). Plaintiff exercised its right of first refusal and set in motion the purchase of Hayden Harper's interests in the wells, which would give plaintiff more than 50% interest in all of the wells subject to the agreement. Response to Demand for Arbitration at 1-2. Defendant became the Operator of the wells after purchasing the pipeline gathering system from Hayden Harper. Id. Plaintiff informed defendant it intended to take over operation of the wells on July 16, 2016, but did not actually do so until March of 2017. Id. at 2; Defendant's Brief in Support of Motion to Vacate at 5.

On July 13, 2016, plaintiff filed its initial demand for arbitration pursuant to § 21 of the agreement. Complaint at ¶ 14. Plaintiff made two claims, both of which sought declaratory relief: (1) a declaration that defendant was removed as operator of the wells by plaintiff as on June 16, 2016, and (2) that defendant accept the gas produced by plaintiff operating the wells and charge plaintiff only compressor fees in doing so. Plaintiff pointed to its right to select successor operators as the basis for its first claim. Its second claim was based on § 4(e) of the agreement, which states that the gas produced by the wells may be sold through the gathering system, and that the compressor costs shall be shared pro-rata according to the amount of gas produced by the wells. Drilling and Operating Agreement at 5.

Defendant responded to the demand by asserting that the purchase and sale of the interests in the wells between Hayden Harper and plaintiff had not been finalized, and called into question plaintiff's right to remove defendant since it had waited for over a year to do so. Response to Demand for Arbitration at 2. It further contended that as the owner and operator of the gathering system, an additional gathering and marketing agreement would be needed before allowing plaintiff access to the system. Id. at 2-3. Lastly, defendant posited that § 4(e)'s mention of compressor fees did not address or otherwise exclude other fees which could be charged to plaintiff. Id. at 3.

Plaintiff filed a second amended demand for arbitration on February 15, 2017, adding two more claims. Second Amended Demand for Arbitration at 4-6. The first was for damages to cover future repairs to remedy equipment violations,[1] and the second sought damages related to improper "gathering fees" charged by defendant (again citing § 4(e) as well as § 6(a) of the agreement). Id. Defendant responded in the same way it had to the first two claims: that plaintiff had not yet purchased the interest in the wells and could not remove defendant as operator; and plaintiff had misconstrued the terms of the agreement. Response to Second Amended Demand and Counterclaim 1-2. Defendant disputed plaintiff's fourth claim, stating the agreement did not preclude gathering fees. Id. at 3. Defendant also made a counterclaim for losses incurred in the distribution of the revenue for the wells. Id. at 3-4.

The arbitration hearings were conducted on May 4 and 5, 2017. Complaint at ¶ 17. On June 23, 2017, Arbitrator King issued an Interim Award and Order. Interim Award and Order at 2. Plaintiff was awarded $143,316 for the unauthorized collection of operator's fees, $226,915

---

[1] This claim was dropped before the arbitration hearing.

3

for gathering fees collected in excess of $0.15/MCF,[2] and ordered both parties to perform an accounting of the relevant fees to determine if the award should be adjusted. Id. at 1. The award also provided plaintiff with access to the gathering system at a rate of no more than $0.15/MCF. Id. Finally, the award denied defendant's counterclaim and awarded attorneys' fees to plaintiff. Id. at 1-2.

Defendant filed a motion to modify the interim award on July 12, 2017. Two days later plaintiff filed a motion for contempt of the award, citing defendant's denial of access to the gathering system. Modified Interim Award at 1; Complaint at ¶¶ 30-31. Defendant requested to offset the damages with invoices plaintiff had not paid, and again contended the parties had to form a new agreement because the existing one was nullified after defendant was removed as Operator. Id.

Arbitrator King issued a Modified Award and Order on July 24, 2017, granting defendant's request to offset damages, but denying its request to form a new agreement. Id. at 1. The award also stated: "All other provisions of the Interim Order which are not modified herein remain in full force and effect." Id. at 2, paragraph 5. Plaintiff filed another motion for contempt on August 11, 2017. Final Award in Arbitration at 1.

Arbitrator King issued the final award on October 11, 2017. It highlighted defendant's denial of access to the gathering system and stated: "[a]lthough the access issue arose subsequent to the hearing and was not formally claimed, it will be treated as part of this Final Award, as well as the sanctions." Id. The final award calculated the total damages for unauthorized charges to

---

[2] The figure 0.15/MCF is derived from the Farmout Agreement at Paragraph 6, the application and/or interpretation of which form much of the subject matter of the instant motion.

4

be $81,658.62, and awarded an additional $35,220.37 for charges related to a second compressor, taxes, and allocation errors. Id. Regarding access, the Arbitrator ruled:

> For purposes of this Final Award, the term "access" as used in the Interim Award means full access to Respondent's gathering system for all of Claimant's wells at their maximum historic flow rates. Any restrictions imposed by Respondent on access to its gathering system in the future would have to be proportionately allocated among all wells producing into the system.

Id. at 2, paragraph 3. Furthermore, although the final award denied both contempt motions, it provided: "[f]or purposes of judicial enforcement of this Order, the provisions of paragraph 3 above should provide sufficient authority." Id. at 2, paragraph 4.

Plaintiff filed this action on October 20, 2017, to confirm the Arbitrator's award. Specifically, plaintiff seeks to confirm: (1) the award of $215,961.11, plus 6% interest from October 11, 2017; (2) that defendant is required to provide plaintiff with full and immediate access to the gathering system at the rate of $0.15/MCF; and (3) that defendant may not charge plaintiff for use of the second compressor. Complaint at ¶¶ 50-52. After responding to plaintiff's complaint, defendant filed the instant motion.

Defendant moves to vacate the Arbitrator's grant of "full access" at a rate of no more than $0.15/MCF. Defendant advances several reasons in support of its motion, all of which essentially contend that the award did not draw its essence from the agreement and/or that "full access" was not among the issues submitted for arbitration.

Defendant first argues that the arbitrator exceeded the scope of his authority by issuing a ruling based on the Farmout Agreement. He purportedly did so because defendant was not a party to that agreement and it did not contain an arbitration clause. And no claims from the Farmout Agreement purportedly were submitted to the arbitrator in any event.

5

Second, defendant asserts "access" was not discussed until after the hearing and therefore was not submitted for arbitration. Third, defendant avers that an unrestricted right of "full access" to the gathering system is not contained in and cannot be derived from the language of either the agreement or the Farmout Agreement. Finally, defendant maintains that the Arbitrator's award was irrational because allowing "full access" to the gathering system without an agreement which specifies the quantity and quality of gas creates undue risks for the parties and the public at large.

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, *et seq*., review of an arbitration award is quite narrow. Akers National Roll Co. v. United Steel, Paper and Forestry, Mfg., Energy, Allied Industrial and Services Workers International Union, 712 F.3d 155, 160 (3d Cir. 2013); accord Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (same). A district court may vacate an arbitration award if, *inter alia*, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

The role of the court is not to review the merits of the decision or correct factual or legal errors. Dauphin Precision Tool v. United Steelworkers of America, 338 Fed. Appx. 219, 222 (3d Cir. 2009) (citing Major League Baseball Player Assoc., 532 U.S. at 509 and Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir.2004)). Instead, for over sixty years the appellate courts have emphasized the very deferential role that courts have in reviewing arbitration awards. Pennsylvania Power Co. v. Local Union No. 272 of the International Brotherhood of Electrical Workers, AFL-CIO, 276 F.3d 174, 178 (3d Cir. 2001); accord Akers National Roll Co., 712 F.3d at 164-65 ("The *sine qua non* of judicial review of an arbitration award is a heavy degree of deference to the arbitrator."). This deferential role

ensures that "the federal policy of encouraging arbitration of [contract] disputes is not subverted by excessive court intervention on the merits of an award." Pennsylvania Power Co., 276 F.3d at 178 (citing United Steel Workers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960)).

The federal policy of encouraging arbitration of contract disputes essentially has given rise to "a strong presumption in favor of the [arbitrator's] award." Newark Morning Ledger Co. v. Newark Typographical Union Local 103, 797 F.2d 162, 165 (3d Cir. 1986). This presumption generally can be overcome "only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop." Akers National Roll Co., 712 F.3d at 160 (quoting Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir.1969) and citing in support Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir.2005), Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 280 (3d Cir.2004), Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir.1993), and Virgin Islands Nursing Ass'n's Bargaining Unit v. Schneider, 668 F.2d 221, 223 (3d Cir.1981)). "In other words, an award may be set aside when an arbitrator manifested a disregard of his authorization, and instead 'dispense[d] his own brand of industrial justice.'" Pennsylvania Power Co., 276 F.3d at 179; see also Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996) ("[W]e must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and we may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement.").

Despite the highly deferential language, the court's role is not simply to "rubber stamp" the arbitrator's decisions. Matteson v. Ryder System, Inc., 99 F.3d 108, 113-14 (3d. Cir. 1996);

see Leed Architectural Prods., Inc. v. United Steelworkers of America, Local 6674, 916 F.2d 63, 65 (2d Cir. 1990) ("This great deference, however, is not the equivalent of a grant of limitless power."). In addition to the manifest disregard of the agreement, the arbitrator's manifest disregard of the law also provides a basis for disturbing an award. United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995). The lack of any record support likewise supplies a basis for invading the province of the arbitrator. Id. An award also may be set aside where there is "evident partiality" to one party that gives rise to "a clear showing of bias." Dauphin Precision Tool v. United Steelworkers of Am., 338 Fed. Appx. 219, 223 (3d Cir. 2009). Fraud, misconduct or violation of public policy are additional grounds for invaliding the arbitrator's assessment. Rite Aid of New Jersey v. United Food and Commercial Workers Union, Local 1360, 2011 WL 5920939, * 3 (D.N.J. Nov. 28, 2011).

In contrast, an arbitrator's interpretation of an agreement cannot be overturned simply because there is a basis to disagree with that interpretation. See News America Publications, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21 (3d Cir. 1990). In other words, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Akers National Roll Co., 712 F.3d at 160 (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam) (internal quotation marks and citation omitted)). Such errors, be they fact or law, are an inherent risk that comes with the benefits gained by arbitration. Id. (the benefits of fast results and reduced dispute-resolution expense "do not come without risk, and 'the possibility of receiving inconsistent or incorrect rulings without meaningful appellate review of the merits is one of the risks such parties must accept when they choose arbitration over litigation.'") (quoting Enter. Wheel, 363

U.S. at 599). And the benefits of arbitration would be eviscerated by permitting or encouraging lengthy and costly judicial review where the parties have bargained for just the opposite. Id. As our Supreme Court has held, "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation is different from his." Akers National Roll Co., 712 F.3d at 161 (quoting United Steel Workers of Am. V. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960)).

Defendant's contention that Arbitrator King's award of "full access" did not draw its essence from the parties' agreement is wide of the mark. Review of an arbitrator's award fundamentally is based on the question of whether the award "draws its essence from the [] agreement." Five Star Parking v. Union Local 723, 246 Fed. Appx. 135, 139 (3d Cir. 2007). An award draws its essence from the parties' contractual agreement "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." Akers National Roll Co., 712 F.3d at 160 (quoting Ludwig Honold Mfg. Co., 405 F.2d at 1128). There was more than an ample basis in the evidence to support Arbitrator King's assessment that the parties had agreed to plaintiff having "full access" to the gathering system.

First, defendant admitted it is a party to the agreement. The agreement provided for arbitration. The Farmout Agreement was incorporated into the agreement. Thus, the record supported Arbitrator King's authority to issue rulings derived from the Farmout Agreement and it was well within his prerogative to find that defendant's contractual obligations were defined by both the agreement and the Farmout Agreement.

Moreover, the issue of access was not submitted by plaintiff under the Farmout Agreement, but rather under the agreement. The agreement, initially between plaintiff and Mountain V, effectively incorporated the Farmout Agreement in the second "Whereas" clause. It provided:

> WHEREAS, Operator has acquired certain rights to develop oil and natural gas wells on leasehold acreage as identified on the map attached hereto and designated Exhibit "A" (the "Drilling Acreage"), on premises situate in Washington County, Pennsylvania, ***which rights were acquired by Operator by virtue of certain documents summarized in Exhibit "B" attached hereto and made a part hereof (all of which documents are herein referred to as the "Documents")….***

Agreement at 1, paragraph 2 (emphasis added). The Farmout Agreement was one of the documents attached in Exhibit B, and thus was "made a part" of the agreement.

In addition, § 3(b)(iv) of the agreement binds the Operator (previously Mountain V) to the Farmout Agreement. Agreement at 3. It provided: "Operator will comply with all terms and conditions of the Documents." Id. And § 17 of the agreement binds all future successors and assigns of both parties, and defendant purchased the gathering system from Hayden Harper, an assignee of Mountain V. Agreement at 11, § 17. Thus, defendant's status as the operator and the assignee/successor to the gathering system supplied the contractual underpinnings to place Arbitrator King's award within the essence of the parties' contractual undertakings.

Finally, while the Farmout Agreement does not contain an arbitration clause, its incorporation into the agreement provided ample authority to compel the arbitration of issues arising from it pursuant to the arbitration clause in § 21 of the agreement. Agreement at 12. It follows that claims relating to "access" properly could have been submitted under the Farmout Agreement; however, plaintiff actually submitted its access claims through § 4(e) of the agreement. See Demand for Arbitration at 4 ("Section 4(e) of Agreement No. 1 and Agreement

10

No. 2 state that Penneco has the right to sell its gas from the Mountain V Wells into KPI's "pipeline gathering system."); Second Amended Demand for Arbitration at 4. Consequently, Arbitrator King's award does not represent a manifest disregard of the agreement, and could rationally have been drawn from either his interpretation of the incorporated Farmout Agreement or § 4(e) of the agreement; and in any event it did not fail to draw its essence from the parties' contractual relationship.

Defendant's assertion that Arbitrator King lacked the authority to grant "full access" equally is without merit. An arbitrator's authority is limited to determinations within the scope of the issues presented by the parties. See Matteson, 99 F.3d at 112-13. "It is the responsibility of the arbitrator in the first instance to interpret the scope of the parties' submission(s)." Id. at 113. Such determinations are to be given the same level of deference afforded to the arbitrator's interpretations of the agreement. Id.; see also Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299 (3d Cir. 1982).

The arbitrator's authority, then, is determined largely by the parties' submissions, and, absent a written declaration issued by both parties, their intent will decide what issues were submitted. Matteson, 99 F.3d at 114. A review of the parties' intent is not limited solely to the agreement in question:

> To determine the intent of the parties given the circumstances in [a] case, then, we cannot limit ourselves simply to one or a few documents. Nor can we rely on isolated statements within those documents. Rather we must examine the documents with an eye towards arranging each of them to create a complete picture.

Id. (citation omitted). In other words, the parties' submissions and their intent provide the focal point and the entire record is taken into account in ascertaining the matters the parties chose to submit for resolution.

11

Here, although the parties did not submit a formal declaration of the issues to be decided, their undertakings in the proceeding below clearly submitted the issue of access to Arbitrator King for consideration. First, both the first and second demands for arbitration raise the issue of access and the fees defendant was charging for access. Id. Defendant engaged plaintiff on this very issue. It argued that plaintiff and defendant would have to enter into a gathering and marketing agreement to allow access and it was not precluded from charging multiple fees for access to the gathering system. Response to Demand for Arbitration at 2-3. Second, after the interim award was issued granting plaintiff access to the gathering system, defendant attempted to modify the award to include a new agreement for future access. Modified Interim Award and Order at 1. In both instances defendant was attempting to bind plaintiff to additional terms in exchange for access to the gathering system. Third, defendant admitted the full flow of gas from the wells could be accommodated by the gathering system, but argued that doing so without additional terms would raise safety and quality concerns. Final Award in Arbitration at 2. A theme it reiterates here.

The parties' interrelated positions and the submissions that accompanied them make clear that Arbitrator King was well within his authority to determine 1) whether plaintiff should have full access to the gathering system, and, if so, 2) the contractual limits on the rates defendant could charge for such access. Defendant's contention to the contrary are belied by the record below.

Defendant's contention that the Final Award's indication that the issue of access arose subsequent to the hearing demonstrates that the arbitrator exceeded his authority is misplaced. First, there is no authority mandating that an issue must be given a full evidentiary hearing to grant an arbitrator the authority to rule on it; such a rule would be untenable and inhibit the

central feature of the process which the parties elected for dispute resolution; after all, Arbitrator King modified the Interim Award in defendant's favor based on a motion it made after the hearing. There also is no authority to support the proposition that an issue must formally be claimed to be "presented" to the arbitrator. The parties' submissions and intent inform the determination of the scope of the issues presented. And the parties' undertakings below clearly placed the issue of access before Arbitrator King.

Second, the Arbitrator stated the issue arose after the hearing because before the Interim Award was issued plaintiff had shut-in its wells and was not attempting to access the gathering system. After the interim award was issued plaintiff immediately began to flow gas into the system, which defendant began restricting. Plaintiff then filed two separate contempt motions over this restriction, and defendant filed a motion to compel the creation of a new contract covering the transportation and sale of gas.

In one sense, the issue of "access" did not arise until after the hearing was concluded, but it does not follow that the issue of access was not submitted. As Arbitrator King made clear in the Interim Award, the potential for subsequent access was considered and ruled upon. He stated: "The wells are currently shut in. If production is resumed, Claimant is entitled to access Respondent's gathering system at the rate of $0.15/MCF." Interim Award at 1, paragraph 3. It was precisely the parties' reaction to the Interim Award on the submitted issue of access that led to the need for the Final Award on the issue.

Finally, even if the language of the final award could be interpreted to mean "access" was not considered during the hearing, and that were dispositive of whether the issue was properly submitted, that interpretation of the award would not be obvious. Precedent precludes the overturning an arbitrator's award based on the language in the decision unless it is obvious from

13

that language that the arbitrator exceeded his or her authority. See Roadway Package System, Inc. v. Kayser, 257 F.3d 287, 302 (3d Cir. 2001) ("….(1) a reviewing court should presume that an arbitrator acted within the scope of his or her authority; (2) *this presumption may not be rebutted by an ambiguity in a written opinion*; but (3) a court may conclude that an arbitrator exceeded his or her authority *when it is obvious from the written opinion*.") (emphasis added). At the very least, the language employed does not cross the line between an ambiguity and an obvious transcendence of authority.

Defendant's claim that a right to "full access" is not contained in the language of either the agreement or the Farmout Agreement asks the court to substitute its interpretation of the agreement for the Arbitrator's, which it is not empowered to do. When reviewing the arbitrator's interpretation of the agreement, the arbitrator cannot be overturned simply because a reviewing court disagrees with his or her interpretation. See News America Publications, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21 (3d Cir. 1990). This deferential standard requires that we review the arbitrator's ruling only to determine whether it arguably was derived from the agreement. See Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996).

Arbitrator King's determination of access and the concomitant rates was derived from the parties' agreement. The agreement states in § 4(e):

> Operator agrees that gas produced from the wells drilled, herein, may be sold through Operator's pipeline gathering system and Operator's compressor located on the lands of the B.D. Irwin Estate, Somerset Township, Washington County, PA. The cost of operation and maintenance of the compressor shall be shared among all wells producing into the compressor pro-rata according to the total volume of gas sold via compression.

Agreement at 5. The Farmout Agreement states in paragraph 6:

14

> Operator hereby gives Penneco the right to market gas through Operator's pipelines, for wells drilled by Penneco, on the leases listed on Exhibit "A", for the sum of [$0.15] per MCF (1,000 cubic feet). In addition, Penneco shall pay for the documented cost of compression, charts and integration, if applicable. All gas will be allocated at the master meter.

Farmout Agreement at 2. Both of these provisions are contained in the agreement between the parties. Both concern plaintiff's use of the pipeline gathering system and the relevant costs and fees. Most notably, the Farmout Agreement uses the same figure set forth in the Final Award. While the contract does not explicitly reference a right of "full access," its provisions make clear that it was intended to address access to the gathering system and the costs accompanying that access; therefore, Arbitrator King's ruling was derived from the agreement. A mere disagreement with that ruling is not a basis for the relief defendant seeks.

Defendant's final claim that the lack of a new agreement made the Arbitrator's ruling irrational in light of the attendant safety concerns which would arise equally is unavailing. Defendant essentially was asking the arbitrator to rewrite the agreement between the parties, which was beyond the scope of his authority. "[A]n award may be set aside when an arbitrator manifest[s] a disregard of his authorization, and instead 'dispense[s] his own brand of industrial justice.'" Pennsylvania Power Co., 276 F.3d at 179; see also Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996) ("[W]e must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and we may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement."). The arbitrator's rulings must be derived from the existing agreement. An arbitrator is not empowered to compel the parties to enter into new agreements, or create new provisions in existing ones. And a reviewing court is not authorized to overturn an award and

15

force the parties into a new one simply because it might be a better arrangement. Such a maneuver resembles the dispensing of one's own brand of commercial justice.

In conclusion, the issue of access sufficiently was submitted for consideration and Arbitrator King's grant of full access drew its essence from the agreement. There was more than ample evidence in the record to support both of these assessments. Both the agreement and the Farmout Agreement are binding upon the parties, and the agreement contained an arbitration clause from which arbitration could be demanded. Both the agreement and the Farmout Agreement contain provisions related to accessing the defendant's gathering system, and plaintiff submitted the issue of access through § 4(e) of the agreement. Furthermore, the language of the Final Award does not indicate that "access" was not "submitted" for consideration, and the language employed therein does not make clear that the arbitrator exceeded his authority in any event. While the right of full access is not explicitly contained in the agreement, the agreement does contain provisions which address plaintiff's access to the gathering system and the fees defendant may charge for that access. The parties' submissions thus properly supplied Arbitrator King with the foundation for his rulings and he was not permitted to order the parties to create new agreements or add new provisions to their existing ones. And the applicable standards of review do not authorize the overturning of his decision because he did not do so.

For the reasons set forth above, defendant's motion to partially vacate the award will be

denied. An appropriate order will follow.

Date: September 27, 2018

                                                                                         s/David Stewart Cercone
                                                                                         David Stewart Cercone
                                                                                         Senior United States District Judge

cc:     Daniel B. McLane, Esquire
        Michael P. Pest, Esquire
        Brad A. Funari, Esquire
        Thomas J. Galligan, Esquire

        (*Via CM/ECF Electronic Mail*)